Sportsinsurance.com v. Hanover Insurance Go ahead, Mr. Kirk. Thank you, Your Honor. Good morning, Your Honors. Edward Kirk from Cladding Co. U.S. LLP for appellant to Hanover Insurance Company. This insurance coverage action is time-barred and should be dismissed in its entirety pursuant to the contractual limitations provision of the policy. That contractual limitations clause, condition M of the crime policy at issue here, required plaintiff to bring any legal action against Hanover involving loss within two years of the date the plaintiff discovered the loss. This language is very clear, as the district court even acknowledged it's exceptionally clear. Plaintiffs allege that it discovered its loss in January 2016. This is in the complaint, but it failed to file this action until March 21, 2020, more than four years later. Therefore, this action, the entire legal action, must be dismissed as it's time-barred by the policy's contractual limitation clause. Now, the district court correctly found that plaintiff failed to comply with this limitation clause and dismissed the breach of contract claim. However, it erred by allowing plaintiff to continue this legal action and pursue coverage for its alleged loss for the same loss based on the same conduct under its implied covenant and declaratory judgment claims. Therefore, the assent court essentially allowed the plaintiff to continue to pursue the same claim for the same losses, just using different theories of liability, which are duplicative of the breach of contract claim. If it was an implied covenant claim for a different set of losses, let's say they didn't property insurer doesn't timely provide payment and then the building gets rained on and collapses and they're seeking good faith and fair dealing claim for the slow adjustment. In that case, would the two-year limitation apply to the covenant for good faith and fair dealing, or is it the fact that the losses sought here are the same losses? I think in certain situations you could argue that it would not apply to different types of loss, but here there's no dispute what the loss is. The loss is their claim for insurance coverage for the alleged embezzlement by their former CFO and related costs that they incurred in filing an action in Canada. Those are the only costs and damages at issue here. It's the only loss, so there's no dispute that there isn't a separate loss here on which you can base an implied covenant claim or declaratory judgment claim for that matter. So the court basically, but the court, however, found that there was separate conduct that backed up the implied covenant claim, that it was based on essentially Hanover's mishandling of the claim, its delayed payment of the claim, and then third, this is what Judge Kahn hung his hat on when he found that the implied covenant claim could go forward, that Hanover, as one of the bases for its denial of coverage, alleged baselessly, according to the plaintiff, that the insured made misrepresentations to Hanover during the claim investigation process. All of these allegations go to one thing, the denial of coverage, which is duplicative of the breach of contract claim. Essentially they're seeking coverage under the policy for these losses and trying to pursue them under different theories of liability, but these really are all duplicative of the breach of contract claim. In a way, isn't what they're saying that you're liable because you didn't pay the claim which you were supposed to do under the contract and you did it in bad faith because you really knew that you were supposed to be different than a classic breach of the covenant of good faith, that's a sort of I mean, I know that in insurance law there are certain escalations of possible damages and so on if you act in bad faith, but it's still the same breach of contract, right? That's correct. It's duplicative. It's the same claim for coverage under the policy. And suppose it were in some way not, that there was some additional element. Are you also arguing that it still involves the loss? Because the whole point is the loss. The whole point is the embezzlement. You didn't pay it. You didn't cover that. And you should have and whatever allegations of bad faith can be added or whatever dilatoriness you could be accused of, it's still all about the same loss. That's what the damages are about. That's what the claim is about. That is what the policy says. It says any legal action involving loss that's discovered, any legal action has to be filed within two years of the discovery of loss. So it is broad and involved. The district court also erred in finding that the term involved is ambiguous, that it has a narrow connotation, which based on a plain and ordinary meaning of the term involve, I don't know how you can reach that conclusion. But also there is no other conduct here supporting a bad faith claim, even if bad faith did exist under New York law, which it doesn't for claims handling activity. Courts have consistently found that that type of claim is duplicative of a breach of contract claim for failing to pay a claim. There's no other allegation here that Hanover engaged in a tort of any nature at all. They try to allude to, I think what they're trying to do is describe Hanover's conduct almost as defamation by arguing that they made misrepresentations in the claims handling process to Hanover and therefore Hanover somehow committed bad faith or slashed and breached an implied covenant. But there's no evidence that Hanover ever published that or did anything that caused additional harm to the plaintiff. All that we have here is a loss that was claimed under the policy. Hanover investigated the claim, determined that it wasn't covered under the crime policy. It was a very specific type of coverage, which is triggered based on when the loss is Therefore, really all that you have here is a claim for coverage that they feel was wrongfully denied. And that's the basis of the claim. The other point I just want to address briefly, the court also erred in failing to allow Hanover to, or to consider the coverage correspondence that Hanover attached to its motion to dismiss. These letters are integral to the claim. They're also referenced in the complaint. In fact, the plaintiff, as I mentioned earlier, the court and the plaintiff base their claim for breach of the implied covenant on statements made by Hanover in one of its coverage letters that the plaintiff misrepresented, made misrepresentations in the claims handling process. And therefore that constituted a separate reason for the denial of coverage. Those letters should have been brought in. And in fact, if you read the opposition brief that the plaintiff put in, they refer to their own letters. So they're actually making arguments based on those coverage letters and characterizing them in a certain way, yet at the same time saying that the court should not consider those letters. Thank you, Your Honor. I reserve two minutes. May it please the court. My name is George Vogren. With me is my associate, Jamie Denenberg, and we represent Appellee Cross Appellant Sports Insurance. This is a unique type of coverage here. This is not a typical claim in the sense of there's a loss, there's some kind of fire, there's an issue of something happening to the property. I don't understand why it's unique. There's a loss. Sometimes under fire insurance policy, the loss is caused by a fire or you don't get paid. If there's a crime insurance policy, the loss is somebody stole your money and you don't get paid unless somebody stole your money. So why is this At a very simplistic level, there is a loss in the sense of somebody stole your money. Yes. And the claim is for that loss, is it not? The original claim is for that loss. The original claim is for that loss. However, in order to prove that loss, unlike a situation where there's damage to property, you have a dispute involving the insured here and their employee. There was a factual dispute between those two people, more than two people, but in terms of what occurred. The proof of loss here is what's at issue. That's what makes this somewhat unique. What's gone on here is that Hanover refused to accept that sports insurance has proven its loss. The basis I understand that. That's the same as any other insurance claim. There's a hurricane and your house is gone at the end of it. And you've got coverage that covers you for wind loss, but not for flood loss. You've got to prove that it was the wind and not the storm surge that knocked down your house and you submit evidence and the insurer either accepts it or doesn't. And if it doesn't and you think they're wrongful, you sue them. That's just like here. If they say we don't think this was a theft, prove it. Well, if you think you had enough proof that they should have accepted it, you sue them. Why do you wait for four years before you sue them? Because what occurred here was that Hanover was not believing the insureds here, but were believing the thief. Well, fair enough. So you go to court and you say, why do they believe this person? She's a liar. Here's our proof. We can see what happened. And then you win your lawsuit or lose. Well, that's exactly what the client did. They went to court in Canada against me. That's a different problem. That's a problem with your dispute with the employee. If you want to recover from her, I don't know why you'd want to do that if you've got insurance, but if you want to recover from her and let the insurance company rather than let the insurance company be subrogated to the loss after you recover from the insurance company, you file a suit against her. And what happens happens. You win the suit, but she doesn't have any money. And so you're still worried about the insurance company. Why can't the insurance company still say, it's very nice that the court in Canada thought that, but we don't think so. And we weren't represented in the case in Canada. So sue us. And then you did. Only you did it way down the road. I just don't get why this is any different than any normal insurance case. Because there are acts here as accepted by the lower court. Remember, we're at a pleading stage. We're not at a summary judgment stage. There are no facts that have been developed aside from the addition of all of these additional documents that were not part of the complaint or frankly the brief of Hanover in terms of a very coverage position. We're looking at a complaint here and whether this gets past the pleading stage. There are additional facts here that are being sued on that do not involve the loss. Involves the conduct of Hanover. The conduct in investigating the loss. That's their conduct. They told you pound sand. There is a line here to be drawn. See you in court. We don't believe any of your nonsense about embezzlement. That's their conduct. They're not paying you. And you're maintaining that not only are they obliged to pay you, but they darn well should have known it from the evidence that was submitted to them. And so they're acting in bad faith. That's what you're saying, right? No, what we're saying is they went after our clients in order to establish a claim for not paying in order to establish a basis for not paying the claim. This isn't a situation where here are the facts and we believe that they're not covered under the policy. They went after the client. When you say they went after, what do you mean? They investigated. They claimed that there were misrepresentations. These are acts separate and apart from the actual payment of the claim. All insurance policies involve payment. So when we're just talking about a breach of the payment obligation, well, there would be no bad faith anywhere at any point in time. I don't understand that. There could be bad faith. There could be bad faith in exactly this way. They did an investigation which was half-hearted or even corrupt and then claimed that the result is we don't have to pay you. They told you you're a bunch of liars and cheats and we don't believe you. I mean, whatever you want to say about it, that's part of the nature of the thing. That's the reasons that they gave you for not paying the claim. But those are separate claims based on the implied covenant as to what they did, not what they didn't do. And that's what the district court found. But I don't understand either why that's even the implied covenant. Because clearly the policy prohibits that. The policy requires them to pay a claim. And you're saying they did not. And not only did they not do it, but they didn't do it in good faith. Okay, well, that's fine. But that's what it's about. The implied covenant of good faith, it seems to me, arises when there is no express obligation in the contract and yet the counterparty does something that deprives you of the benefit of the bargain in some way. And we just can't allow them to do that even though it's not an express term in the contract that they're not allowed to do the particular thing they did. Here, they were never, according to you, given enough evidence. You presented it to them. They purported not to believe you. Issue joined. But that's the bad faith component that is being sued on here in these circumstances. It's different from just not paying the claim. Yes, yes, yes. You see, but why is it different? It's just what's in their head. You're alleging not only did they not pay it, but they did it in bad faith. But it's still the refusal to pay the claim that is the problem. But that is not the basis of the claim. If there's an implied covenant of good faith that they've breached, that's a separate claim and that's accepted. And it doesn't involve the loss. It does not involve the loss. It's separate from the loss, which involves the embezzlement. So you're not actually suing to get the $275,000 or $500,000 or whatever it was that she stole. You just want damages for your bad feelings because they chose to do this in a bad way? No, Your Honor. Under these circumstances, it's still part of the claim for bad faith that they didn't pay the loss. So it involves the loss. It doesn't involve the loss. The facts are separate from the loss. Don't you have to prove the loss to win any of this? We would need to prove the loss. That doesn't make it involving the loss. It doesn't make it a claim involving the loss that in order to have the claim in the first place, there must be the loss. In order to win the lawsuit, the claim in court that you're saying is the breach of the covenant, you have to prove the loss. It still is not a claim involving the loss. It's actually a higher standard than merely proving the loss. You have to prove that the loss should have been paid and it was not paid because of the bad faith. This is a distinct claim. And this is accepted by the courts in Pan-Asia and by economy. There is a separate claim where everyone is struggling to draw the line is where does it become non-duplicative? But on Your Honor's side, yes, and everything would involve the loss and everything is duplicative. But that's not what the courts have said here. Our clients are claiming that we pursued the suit in Canada because of the fact that Hanover would not accept the facts that were being said to them. That's a different loss based off of the claim. That's a different type of damage consequential to the breach of the implied covenant. Again, I'm basing, we don't have, this is at a pleading stage. The question is whether there are facts here that could be proven. What prevented you from filing a lawsuit in a timely way under the contract that alleged exactly what you allege here? Whether or not you also file a protective claim in Canada in case you lose against the insurer, you can still hope to get blood from your stone employee and you can pursue that claim and you can go to the court in Canada, file it and say, wait, can we just defer this while we pursue the real story with the insurer? What prevented that? My client's a small business. They don't have unlimited resources. Secondly, and again, Your Honor is characterizing the suit in Canada as an effort to It's a question of doing exactly what you did anyway sooner. Your Honor is characterizing the suit in Canada as being in some sense separate from what's going on with the claim of Hanover. Our allegations are that Hanover and pursuing the suit in Canada was related to the claim and was encouraged by Hanover. So there's more here than just the sense of that we were trying to subrogate against Ms. Alberudi. We were trying to prove the loss to Hanover. Those are the allegations. We're at an allegation stage. But how do you prove something to Hanover, not by evidence submitted to Hanover, but by the same evidence submitted to the court in Canada? It might be psychologically helpful to know that a court decided this in your favor, but they're not bound by that. That's not race judicata or collateral estoppel as to them. Hanover, at least the allegations are here, Hanover was not believing sports insurance. They were believing Ms. Alberudi. You now have a decision between Ms. Alberudi and sports insurance that Ms. Alberudi defrauded sports insurance. At least from the point of view of an insurance company, that should be more persuasive evidence than just what they believe sports insurance was claiming. So in effect, you're proving that loss. It could have gone the other way. We could have sued and they could have said, well, you never pursued Ms. Alberudi in Canada. You're kind of, dare I say it, damned if you do, damned if you don't. So looking at it from the other direction, we could have been sitting here arguing over whether or not they are disagree with our position because we never pursued Ms. Alberudi. Again, their condition of Condition M also includes that we have to comply with all policy conditions. Their own argument is that we have not proven the loss. I believe I'm out of time. Did you ever have a conversation where your client ever seek an extension of the contractual limitation? They did not, Your Honor. Mr. Kirk? Thank you, Your Honor. I'll be very brief. It seems that the plaintiff is trying to restart the clock on the time for it to bring a legal action by somehow claiming that they had to bring this action in Canada and they were only allowed to bring the suit against Hanover once that action had reached its final course. But that action, there's no evidence at all that Hanover encouraged the plaintiff to bring this lawsuit in Canada. Even if there wasn't any encouragement by Hanover, I'm interested in this notion, looking at the Pan-Asian and the Bayekon cases, at this notion that because of your delay, I had to take other steps to protect my interests that cost me money or cost me loss in the case of the rain destroying the building. Isn't that a distinct enough claim that it constitutes a different loss? It may not lead to the same measure of damages as suing on the loss, but isn't that distinct enough that we ought to be at least thinking about whether involves the loss extends to that different claim? It's not, because Bayekonomy is a different type of situation. That's a business interruption policy where the delay, the insurer's delay in making payment caused the loss and the courts found that that was foreseeable and therefore in that limited circumstance the insurer could be held liable for consequential damages. Here, this is an action brought completely on by the insured sports insurance. In fact, they filed the action a month before they even told Hanover about this claim. So Hanover was not involved with the decision to file it and then Hanover denied coverage, by the way, in January of 2017. They continued on with the action for two and a half years. They incurred most of these costs long after Hanover had incurred or had denied coverage for this claim. The costs also are not, there's no foreseeability, there was no, there's no, they can't allege that these costs were foreseeable because of a breach of the contract as you had in Bayekonomy. Well, if you're not going to cover the theft loss, then our alternative is to pursue a theft claim against the thief, right? I mean, that seems pretty foreseeable. A separate recovery claim, but that's a different issue than whether or not there's coverage under the policy. The policy covers theft and they pursued a claim against their employee, who sued them, by the way, for wrongful termination in Canada, but that had really nothing to do with the coverage under the fidelity bond or the crime policy that we have at issue here. And by the way, I mean, the policy contemplates specifically that these types of costs would be on sports insurance's own nickel because there actually is a provision in the policies that says recoveries will be net of any costs incurred by sports insurance. So there's no foreseeable or there's no reasonable expectation of the insurer to recover these types of costs if there is a breach of the contract. And when it comes down to it, the contractual limitation clause is crystal clear. It applies to any legal action, not just bits and pieces of actions or certain causes of action like breach of contract versus breach of implied covenant. It applies to the entire legal action if they don't bring a lawsuit within the two year period after they discover the loss. What's interesting is they claim that this is all about proof of loss and that they had to go prove the loss before they were able to get coverage. They put in two proofs of loss in 2016 swearing to the fact that they incurred losses under the policy and now they're saying in this litigation, on this motion, on this appeal, that they had to wait a couple more years before they could actually prove their loss. None of these arguments really make much sense. Thank you. We'll turn to JTH Tax. Good morning, Your Honors. And may it please the Court. My name is Matt Nicholson from the Law Firm of Williams and Connolly and I represent the appellant JTH Tax, also known as Liberty. In this case, the District Court abused its discretion by denying Liberty's motion for a preliminary injunction against its former franchisee, Alexia Agnet. It's undisputed here that Agnet is in breach of her post-termination obligations, including her covenant not to compete. Specifically, she's operating a competing rocket tax business at the locations of her former franchises and she admits that she continues to serve Liberty customers and gain new clients. In this case, however, the District Court declined to enjoin Ms. Agnet and we submit abused its discretion in doing so. Now, the Court first abused its discretion on the issue of irreparable harm. As this Court recognized in the Singus case, courts generally hold that where a former franchisee breaches a reasonable covenant not to compete, it inflicts irreparable harm on the franchisor by both interfering with its customer relationships and eroding its goodwill. And, Your Honor, that principle applies with full force here. Ms. Agnet already is interfering with Liberty's customer relationships. She is also eroding its goodwill by operating from the same locations of her former Liberty franchises. Indeed, some of these locations have been there more than ten years before she even purchased them. If Liberty is denied the opportunity to operate from these locations, it will lose all the goodwill and customer loyalty that's been built up with those locations over the past decade. Now here, the District Court acknowledged that Agnet was, in fact, serving Liberty's customers from her former franchises. But the Court held that that was not enough to establish irreparable harm. And we think the Court erred in that holding. Specifically, the Court committed a few errors here. One, it reasoned that by terminating the agreements here, Liberty had ended its relationships with the customers. But, Your Honor, I think that ignores the fact that there is a contract here with post-termination provisions. And the very point of those is that Liberty is obligated to turn over her leases for these locations to Liberty. She's obligated to turn over her franchise phone numbers, emails. She's obligated to turn over the customer files. And the point of that is to allow Liberty to continue serving the customers by establishing a new franchisee in those locations or by establishing a company store. But the District Court here, I think, further erred by saying that faulting Liberty for not presenting evidence that it intended to immediately open those company stores or that prospective franchisees were imminently seeking to enter the local market. But I think that sort of heightens Are you suggesting that there is case law binding on us that holds that as a matter of law, a franchisee who does not comply with these type of obligations, automatically that involves irreparable harm? No, Your Honor. It's not an automatic rule. So if there were facts in a particular case that suggested that under these particular circumstances, whatever they might be, there really isn't harm. Would that be, that's not automatically reversible error just to say that. You're correct, Your Honor. So this is really a factual determination. Yes. So there's not really, as I read it, a ruling by the District Court that if a franchisee, a franchisor does not have someone on hand ready to take over, automatically there is no irreparable injury. That's just one of the facts that the court considered, maybe the principal fact, in determining this inherently factual dispute. You're just saying, what you're really saying is it's clearly erroneous determination by the judge because there really is, this does not really undermine whatever general assumption we make that there is irreparable loss in these circumstances. No, Your Honor. I don't think we're challenging any factual finding as being clearly erroneous. I think here the... So you're at least accepting, you're not challenging the factual finding that you did not have someone lined up ready to go in. You're saying that it is an erroneous decision by the district judge that that whatever history there is in this case, defeats the assumption of irreparable loss. Yes, Your Honor. I think that's a correct way to describe it. We're contesting the legal significance of that. Yes, we didn't have evidence that there were prospective franchisees lined up to come into these particular neighborhoods. But I think as courts have recognized, when a former franchisee continues to compete in the local area and when she continues to occupy those franchises, you're going to have a problem finding new franchisees to come. At any rate, you could operate these stores yourself. We could if she were to comply with her obligations, which is to give us leases back. But she's not doing that. So in that sense, what you're suggesting is that the fact of not having another franchisee or potential franchisee already lined up is effectively irrelevant to this determination because, among other things, if she got out, you could run the business yourself for a while, maintain your position in Brooklyn, waiting for somebody better than Agnot to come along and take over as a franchisee. Yes, Your Honor. I don't think it matters that there's no prospective franchisee lined up because, like you say, we could take over the store, operate a company store. And we pleaded in the verified complaint that she was preventing us from doing that by not turning over the leases. Could you get to the, you know, we've taken up a lot of time with this, that the merits issue rather than the irreparable injury issue, is it a defense on the merits that I really didn't reach anything, I didn't do anything illegal or submit any false tax returns, that essentially the, I take it that Agnot's defense here was that, as a factual matter, all of these defects that were found in the audits are sort of Mickey Mouse. We didn't check the box on the form that don't really matter. Now, that would be a factual determination, would it not? Yes, Your Honor. I think that she could contest that she didn't commit any breach. But here, your predecessor counsel below put the case this way on page, appendix 359, transcript page 29. Basically what she's asking is, you should believe me rather than the head of compliance and the verified complaint, which is verified, you know, by a fairly high-ranking executive at Liberty. And she's asking you to say that they're wrong, notwithstanding that the head of compliance is specially trained in this. If that's the issue, isn't this just a credibility determination? You may say it was wrong. You're saying it's clearly erroneous that she believed Agnot's version that this was all Mickey Mouse nonsense and not really violations? Well, first of all, Your Honor, we did submit a declaration from that vice president. Yeah, I got it. I understand. Okay, wait. I'm sorry. I didn't say there was no declaration. Of course there's a declaration. Sure. What she's asking is, you should believe me rather than the head of compliance, who's the man who made the declaration. And I don't think Agnot contested the fact that there were actual errors. She admitted that only some of the returns were prepared correctly. Others were not. Well, there are actual errors, but she says they're not so important. And one of the problems that I had myself with the declaration is that it's not so clear whether what is being said is that these errors were violations of the law or made the tax returns inaccurate or were the failure to submit required forms to the IRS, but were breaches of your policies. Now, it seems to me that there may be a reason to terminate, but the way this case seems to have been presented below was there are false tax returns. There are things that the IRS would charge penalties for. And then there are things like, as examples, and I'm now looking at the paragraph 14 of the declaration of Mr. Delaney, the Schedule C violation, which is what we've heard most about in the proceedings below, was no proof of business existence. As it happens, I mean, I file Schedule C because my wife has a business. There's nothing that says, there's nothing, I've never been asked or read the forms or TurboTaxes and tell me that I have to file a proof of business existence. We say, here's how much money she made, here are the expenses. So what is a proof of business existence, for example? I take your point, but there are specific requirements in federal law that apply to tax preparation services. So in this example you're giving, it would be a violation of 6694 of the Internal Revenue Code, because you would be taking an unreasonable position as a tax preparer that results in an understatement of liability. Here, if you're claiming for the taxpayer that he or she has business income or business expenses with no verification that the business even exists. And what is required as proof of business existence? The man comes into the store and says, here's what I do. I basically do odd jobs, construction type, repair type things for people in the community, and they pay me. And being an honest person, I don't take advantage of what an IRS agent once told me was Section 2 of the Code, cash doesn't count. I don't just take the cash and run. I want to put it on my tax return and pay whatever I'm supposed to pay. And here's how much money I got paid for these various jobs. What is the documentation that is required? I think at a minimum you would have to bring in some sort of books and records for your business. Here, though, there was no documentation at all in many of these cases. That results in an understatement of tax liability because the taxpayer would be able to claim an earned income tax credit. And as to materiality, Your Honor, this was one of the issues at the heart of the DOJ-IRS investigation. I understand that, but I'm just trying to understand what is the kind of, when it says no proof of business existence, what are we actually talking about? And in particular, I hear what you're telling me, and that's very helpful. If I'm determining what I think about this case and who should be their second guessing the judge, and I'm not clear that there was anything in this declaration that explained exactly what it was that was missing by way of proof of business existence, or that explained that the problem is that there are these specific requirements on tax preparers. And still it goes further to say whether that is something the IRS says, this is what you need to have in your file, or the IRS just says you need to have something in your file, and we determined what that something should be, and that was missing. And here you have this person saying, maybe not truthfully, maybe it's not really ultimately a defense, but saying, I kept asking, what is it that I'm supposed to have, and nobody told me. So when we're talking about what is a clearly erroneous finding or an abuse of discretion, I have to go on what was in front of that judge. And I don't think you'll find anything in Mr. Delaney's declaration that explains what you just said. Well, Your Honor, I guess two points. One, I don't think there's any real contest that there were breaches and there were errors. I think it goes only to materiality, and I think materiality is shown by the stuff in the record about the IRS lawsuit, the DOJ lawsuit, which explains that this was one of the issues that the DOJ and the IRS was concerned about, that Liberty franchisees were submitting Schedule C's with no documentation whatsoever. And so that's why this due diligence was done. That's why these compliance reviews were done. And they found that Ms. Agnett was continuing through her franchises to submit these Schedule C's with no documentation whatsoever. I think that is a material violation. The only bit of record evidence that the district court pointed to was that Ms. Agnett had said we were picking on, quote, little things. Well, here's another one. On the academic tax credit, this is in paragraph 15. And these are, after all, the auditor's cherry-picked examples that are presumably the best ones, right? That there is a form, 1098T in the client file, I don't know what that is, but I guess Mr. Delaney does, to support the claim, but box 8 for at least a half-time student is not checked. Well, you have to be at least a half-time student, right? So we don't know whether this person was a half-time student or not, or whether this could have been easily corrected by checking with the person. And Ms. Agnett is taking the position that, sorry, we made some mistakes. We didn't check the box. But we should have checked the box because the person is a full-time student. And there's nothing that says to me that that is something that the IRS would come full-bore after somebody or would ever find out whether the form in the file has that box checked, as opposed to this is a person who wasn't a student at all, et cetera, et cetera. And there are other examples that fit into that mold where you have someone claiming that they're eligible for this tax credit, but not reporting their scholarship income, which would make them potentially uneligible. Do we know that there was scholarship income? In that case, I think that there was in the file evidence of scholarship income, but it wasn't reported on the tax form. I'll have to go back and look at that for sure. And again, the question is not, of course, what's the real truth. The question is, does anyone actually say in these declarations that this person had scholarship income and the file itself showed that? All it said is the person didn't report scholarship income, and there's no real documentation on your side that that is true. Now, I understand at some level, ultimately, the burden is going to be on her, I suppose, to show that if she claims this was Mickey Mouse, she's got to say something about that. When it gets to trial, it's going to be persuasive to a fact finder. But at this stage, you're asking for a preliminary injunction. And it seems to me one reading of this record is there's certain arrogance. We win all these. We're supposed to win all these. And we know that we've got a good case. But is it really documented in a way that prevents a judge from saying, I'm not sure. I don't think you carried your burden, because she says this is all Mickey Mouse. And I'm not persuaded that it's not. Yes, Your Honor. I think it is more than sufficient, because he gives multiple examples. The Schedule C ones that we've looked at, we've looked at whether they were material or not. And I think we had a clear likelihood of success showing that those are material, because they were at the heart of the IRS investigation, as I've said. So even if there are particular examples in the declaration that you may not give as much weight, on the Schedule C examples, I think there's a clear showing of materiality. And Ms. Agnett simply saying that you were picking on small things. Because basically anything, given the history with Liberty, anything that's a problem with a Schedule C is a big deal. Your Honor, it's a big deal because the IRS views it as a big deal. Yeah, exactly. As you know, because they came after you. Correct, Your Honor. And that's why Liberty is taking this seriously and doing these compliance reviews. I see I'm far over my time. Thanks very much. May it please the Court. My name is Jay Ashaiga. I am associated with the firm Abrellian Associates. And I'm here on behalf of Agnett. She is the defendant and appellee in this matter. And I thank you for your time and consideration on this matter. I think, Your Honors, that this is a very simple case. It's whether or not a preliminary injunction should have been granted or not. And the District Court and myself firmly believe that it should not have been granted. They were not able to establish the fact that there was going to be an irreparable harm. For many reasons, and I will get into that. And the other is they were not able to show that they would prevail or the likelihood of success was not clear in this case. Can I ask you a question about the way you framed the issue before us? Whether a preliminary injunction should have been granted sounds like, in your view, we're reviewing de novo. Or is the question whether the District Court abused its discretion in declining to issue a preliminary injunction? Yes, Your Honor. It is whether or not there was an abuse of discretion. But Your Honors have the ability to review the facts and to make a decision based on what the District Court found. Well, if we think it should have been granted, can we reverse on that basis? Or do we also have to determine that the District Court abused its discretion in concluding otherwise? Yes, Your Honor. You would still have to determine whether or not the District Court abused its discretion. Thank you. What exactly do you think is left in this case? That is, assuming for the argument that opposing counsel prevails, where are we left in this case? Or where is the District Court left? Well, Your Honor, if opposing counsel is able to successfully argue his case today, I do believe that it should be returned to the District Court in order to get more information and then, again, assess whether or not a preliminary injunction should be granted. And what do you foresee would be the proceedings on this putative reband? Well, Your Honor, I think there would be affidavits from my client testifying to the facts, and I do believe that there should, again, be oral testimony or testimony in court. But why would that be? I don't fully understand that. I mean, I understand the argument that the District Court did not abuse its discretion in making this decision. Then, I guess it goes back to the District Court, I suppose. The other side could make a new motion, or I suppose they could just proceed to trial and discovery in trial and continue the quest for a permanent injunction. But why would you or anybody else get a second bite of the apple? They made the record that they made. If that's good enough to establish that it's so clear that a preliminary injunction should have issued that the District Court abused its discretion, isn't the next step the District Court enters the injunction and then you're enjoined pending if you choose to follow it? I mean, I gather you've made an argument that that would be the end of the road for her because she couldn't be in business anymore, couldn't fund the litigation, it would all be over. But as a legal matter, the case would proceed towards whether or not the plaintiff does prevail on the merits. Yes, Your Honor. I do believe that there are still significant amount of facts that are in my client's favor. One, she... But she did testify. I mean, she didn't put in any declaration, but she did testify. Yes. The District Court found that was enough. If the District Court was within the bounds of its discretion, you win, there's no injunction, at least now. They can then ask the District Court if they want to do something else. The judge didn't like our showing, we'll try again. And it would be in the District Court's interest in getting a permanent injunction if they think they're so likely to prevail. But I just don't understand why this isn't the end of the line for the preliminary injunction. Either the District Court abused its discretion, should have entered an injunction on this record, you lose, he wins, or the District Court was within its discretion, you win, he loses, no preliminary injunction. Where's the remand for more stuff on the preliminary injunction issue as opposed to on the ultimate merits of the case? Yes, Your Honor. I think that there were quite a bit more facts. When we get into the minutiae of whether or not the client did actually prepare fraudulent tax returns, incorrect tax returns, I think that there possibly could be more focus on the fact that, one, she did not do that, but also the fact that she did not provide support. Yeah, but that's the merits of the ultimate case. I guess what I'm thinking, and I wonder about this often when there's an appeal of something like this, this is a preliminary injunction. By taking this appeal, Liberty has given your client more time to stay in business rather than pursuing the ultimate case, and we're fighting here about something preliminary, which, you know, that's why it's kind of abuse of discretion, is this is a preliminary kind of thing. It's not the win or loss, and we're spending all this time trying to decide, they've got a right to have us decide, whether this was an abuse of discretion. If they didn't make their case sufficiently to persuade us that any reasonable judge would have granted the injunction, they failed. No preliminary injunction. Life goes on. If they did make such a case on the record that was before the district court, the preliminary injunction should be granted. And then we go on with the merits. I don't know why you get another chance if we think they already made their showing. I don't see why they should get another chance, really, if we think they didn't. I agree, Your Honor, yes. And I think that, again, the underlying merits of the case are strongly in my client's favor. But, you know, you look at this contract, they've focused on language that says they can cancel you if your client has committed a material violation of any law, ordinance, rule, or regulation, essentially of the IRS, or committed any act that is or could be, in Liberty's determination, harmful, prejudicial, or injurious to the Liberty brand. You know, they're saying, we got investigated by the government. We're told we need to clean up our act about making sure that we've dotted every I and crossed every T, especially about Schedule C's. And she made numerous mistakes on Schedule C's. Now, maybe those mistakes would not amount to a violation of law or the submission of a fraud to the IRS, but isn't it clear that they're in trouble? Doing the Mickey Mouse, fail to check this box, fail to do some little thing that we've asked people to do. That's really a big deal. Yes, Your Honor. I think that there is still the issue that my client contends that she did not submit tax returns to the IRS. It was Liberty Tax who submits them to the IRS. She prepares the returns, gives them to Liberty Tax, and Liberty Tax makes sure it's correct. They submit it to the IRS. The IRS then pays Liberty Tax the return. So, therefore, if there were all these fraudulent tax returns, why was the IRS issuing all these returns and then not going after my client for preparing fraudulent tax returns? Well, I thought what we heard was they, you know, went and corrected the errors. Yes, Your Honor. Now, the other issue, and I think this is very important, the contract requires Liberty Tax to train my client and to, I guess every tax office preparation company has their own way of doing things, and Liberty Tax has theirs. They're supposed to provide her guidance in how she's supposed to prepare the tax returns according to their software program, and they've changed it throughout the years that my client was there. I believe she was there two years. My client contends that that did not happen, that they did not train her how to use their program. In fact, in the record, they didn't even have training manuals for their upgraded systems. So my client and many other tax offices had no idea how to submit tax returns according to Liberty Tax's system. I think that is a breach of the contract, and I think that the district court was correct in questioning the propriety of that training.